WO          IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

THOMAS STEELE,                      )
                                    )
                        Plaintiff,  )
                                    )
        vs.                         )
                                    )
ANDREW M. SAUL, Commissioner of     )
Social Security,                    )
                                    )          No. 5:20-cv-0007-HRH
                        Defendant.  )
_____)

O R D E R

This is an action for judicial review of the denial of disability benefits under Title II

of the Social Security Act, 42 U.S.C. §§ 401–434.  Plaintiff Thomas Steele has timely filed

his opening brief[1] to which defendant, Andrew Saul, has timely responded.[2]  Oral argument

was not requested and is not deemed necessary.

Procedural Background

On June 13, 2017, plaintiff filed an application for disability benefits under Title II,

alleging that he became disabled on April 1, 2017.  Plaintiff alleges that he is disabled due

---

[1]Docket Nos. 19 and 20.

[2]Docket No. 22.

Case 5:20-cv-00007-HRH   Document 24   Filed 02/19/21   Page 1 of 22

to spinal fusion and emphysema.  Plaintiff's application was denied initially, and he requested a hearing.  After an administrative hearing on January 11, 2019, an administrative law judge (ALJ) denied plaintiff's application.  On May 18, 2020, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's April 15, 2019 decision the final decision of the Commissioner.  On July 16, 2020, plaintiff commenced this action for judicial review of the Commissioner's final decision.

## General Background

Plaintiff was born on March 1, 1964.  He was 53 years old on the alleged onset date of disability, 54 years old at the time of the administrative hearing, and 55 years old by the time the ALJ issued her decision.  Plaintiff has a high school education.  Plaintiff's past relevant work includes work as a foreman and welder for a commercial plumbing company, a welder for a ship builder, and a maintenance worker and/or supervisor.

## The ALJ's Decision

The ALJ first determined that plaintiff met "the insured status requirements of the Social Security Act through December 31, 2021."[3]

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[4]

---

[3]Admin. Rec. at 17.

[4]The five steps are as follows:

Step one: Is the claimant presently engaged in substantial

(continued...)

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since April 1, 2017, the alleged onset date. . . ."[5]

At step two, the ALJ found that plaintiff had "the following severe impairment: status post cervical spine fusion. . . ."[6] The ALJ found plaintiff's obesity, chronic obstructive pulmonary disease, and depressive disorder to be nonsevere impairments.[7] In determining that plaintiff's depressive disorder was a nonsevere impairment, the ALJ found Dr.

---

[4](...continued)
> gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit . . . h[is] ability to work? If so, proceed to step three. If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform . . . h[is] past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow . . . h[im] to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[5]Admin. Rec. at 17.

[6]Admin. Rec. at 17.

[7]Admin. Rec. at 17-19.

-3-

Buechner's opinion to be highly persuasive.[8]  The ALJ found Dr. Daniel Gonzales' opinion

not "very persuasive[.]"[9]  The ALJ found Dr. Frank Gonzales' opinion unpersuasive.[10]

At step three, the ALJ found that plaintiff did "not have an impairment or combination

of impairments that meets or medically equals the severity of one of the listed impairments

in 20 CFR Part 404, Subpart P, Appendix 1. . . ."[11]  The ALJ considered Listing 1.04

(disorders of the spine).[12]

"Between steps three and four, the ALJ must, as an intermediate step, assess the

claimant's RFC."  Bray v. Comm'r of Social Security Admin., 554 F.3d 1219, 1222–23 (9th

Cir. 2009).  The ALJ found that plaintiff had

> the residual functional capacity to perform light work as defined
> in 20 CFR 404.1567(b) with the following exceptions.  The
> claimant can frequently climb ramps or stairs, balance, stoop,
> kneel, crouch, and crawl.  The claimant can never climb ladders,
> ropes, or scaffolds.  The claimant should avoid all irritants such
> as fumes, odors, dust, gases, poorly ventilated areas and should
> avoid unprotected heights.[13]

---

[8]Admin. Rec. at 18.  Dr. Cheryl Buechner testified as a medical expert and opined
that plaintiff's depression was not a medically determinable mental health impairment.
Admin. Rec. at 37.

[9]Admin. Rec. at 18.  Dr. Daniel Gonzales' opinion is discussed below in detail.

[10]Admin. Rec. at 18.  Dr. Frank Gonzales' opinion is discussed below in detail.

[11]Admin. Rec. at 19.

[12]Admin. Rec. at 20.

[13]Admin. Rec. at 20.

-4-

The ALJ discounted plaintiff's pain and symptom statements because plaintiff improved following his 2017 neck surgery, "there was evidence of misuse of pain medication[,]" he received unemployment benefits in the last two quarters of 2017 and the first quarter of 2018, and his statements were inconsistent with his reports of daily activities.[14]

The ALJ considered the lay testimony of Jane Roberts and found that "it is not consistent with the overall objective medical evidence."[15]

The ALJ found Dr. Gaeta's opinion very persuasive.[16] The ALJ found Dr. Merrill's opinion somewhat persuasive.[17]

At step four, the ALJ found that plaintiff was "capable of performing past relevant work as a maintenance supervisor" as "generally performed."[18]

---

[14]Admin. Rec. at 21-22.

[15]Admin. Rec. at 22-23. Roberts was plaintiff's significant other. She completed a third-party function report on November 9, 2017. Admin. Rec. at 258-266.

[16]Admin. Rec. at 23. Dr. Gaeta's opinion is discussed below in detail.

[17]Admin. Rec. at 23. On February 18, 2018, Jeffrey Merrill, M.D., opined that plaintiff could occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk/ sit for 6 hours, was unlimited as to pushing/pulling, fingering/feeling, climbing ramps/stairs, balancing, stooping, kneeling, and crouching; could never climb ladders/ropes/scaffolds; could occasionally crawl; was limited in reaching and handling on the right; and should avoid concentrated exposure to extreme cold, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards. Admin. Rec. at 97-99.

[18]Admin. Rec. at 23-24.

Thus, the ALJ found that plaintiff had "not been under a disability, as defined in the Social Security Act from April 1, 2017, through the date of this decision. . . ."[19]

Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . . ." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

---

[19]Admin. Rec. at 24.

<u>Discussion</u>

Plaintiff first argues that the ALJ erred at step four. At step four, the ALJ found that plaintiff could perform his past relevant work as a maintenance supervisor as that job is generally performed.[20] The ALJ found that plaintiff's past relevant work included work as a maintenance supervisor (DOT 891.137-010), which is generally performed as light work.[21] The ALJ noted that at the hearing, plaintiff testified that he did not supervise anyone at this job, which led Labrosse, the vocational expert, to reclassify this work as a maintenance repairer, building (DOT 899.381-010).[22] Labrosse testified that such work would be classified as medium duty work.[23] However, in her decision, the ALJ stated that she found plaintiff's statements in Exhibit "4E to be more persuasive" than plaintiff's hearing testimony.[24] The ALJ stated that plaintiff had "reported working as a Maintenance Supervisor several times" in Exhibit 4E and that he "reported light exertional level of work."[25]

---

[20]Admin. Rec. at 23-24.

[21]Admin. Rec. at 23.

[22]Admin. Rec. at 23.

[23]Admin. Rec. at 75.

[24]Admin. Rec. at 24.

[25]Admin. Rec. at 24.

-7-

Exhibit 4E contains no statements about plaintiff's work history, but rather is a list of medical providers that plaintiff's lawyer submitted to the agency.[26] The ALJ presumably meant to cite to Exhibit 7E, which the ALJ referred to at the administrative hearing. At the hearing, the ALJ was asked "what are you relying upon for this maintenance supervisor position?" and she replied "[t]he form he filled out at 7E."[27] The form at Exhibit 7E is a Work History form. On this form, plaintiff listed his past work as a maintenance supervisor at a condominium complex for the time periods of August 2011-September 2014, October 2011-July 15, 2012, and February 3, 2004-September 5, 2008.[28] For the time period August 2011-September 2014, plaintiff described his job as "fill out and complete maintenance orders" and checked "No" to answer the questions of whether he supervised other people, hired employees, or fired employees.[29] But, after checking "No" to answer the question about supervising other people, he then indicated that he supervised 2-6 people and spent 5 hours a day doing so, although it should be noted that this information is typewritten, while the rest of the information on this form is handwritten.[30] For the time period of October 2011-July 15, 2012, plaintiff described his job as "maintenance work orders included light

---

[26]Admin. Rec. at 239-242.

[27]Admin. Rec. at 73.

[28]Admin. Rec. at 272.

[29]Admin. Rec. at 273.

[30]Admin. Rec. at 273.

plumbing issues, small carpentry, heating issues, maintained mech room, including boiler maintenance, building security."[31] Plaintiff again checked "No" when asked if, in connection with this job, he supervised other people.[32] These two jobs appear to be the same job as the second time period overlaps with the first. It appears that on the form, plaintiff was attempting to correct the dates for this job and as a result ended up listing the job twice. Plaintiff reported no details for the maintenance supervisor job listed for the 2004-2008 time period.

Plaintiff argues that the ALJ erred in classifying this past relevant work as a maintenance supervisor. First of all, plaintiff disputes that he listed maintenance supervisor as his job "several times" as the ALJ found. Rather, he contends he listed this job twice. In addition, plaintiff argues that in assessing work as it is generally performed, it is the "functional demands and job duties" that matter, not the job title. Uppal v. Astrue, Case No. 1:10–CV–1277–GSA, 2011 WL 4500845, at *4 (E.D. Cal. Sept. 27, 2011). In other words, plaintiff argues that the ALJ should have focused on what plaintiff said the duties were of his "maintenance supervisor" job rather than focusing on the job title. Plaintiff argues that the ALJ ignored the evidence that plaintiff did not supervise any employees, that the maintenance supervisor job title was "just the title that they gave me[,]"[33] that his job duties

---

[31]Admin. Rec. at 275.

[32]Admin. Rec. at 275.

[33]Admin. Rec. at 74.

-9-

consisted of doing the maintenance work for the condominium complex, and that the vocational expert believed that this job should be reclassified as a building maintenance repairer. Plaintiff argues that the ALJ cannot pretend that evidence that contradicts her findings simply does not exist. See, e.g., Adeena W. v. Saul, Case No. 6:19-cv-00051-SB, 2020 WL 2992191, at *5 (D. Or. June 4, 2020) ("ALJ errs when he considers the claimant's evidence selectively and ignores evidence that contradicts his findings"). Plaintiff insists that the ALJ's finding that his past relevant work was that of a maintenance supervisor is not supported by substantial evidence. Thus, plaintiff argues that the ALJ erred at step four.

As defendant points out, plaintiff "is the primary source for vocational documentation[.]" Valencia v. Berryhill, Case No. 1:17-cv-01662-GSA, 2019 WL 1931977, at *8 (E.D. Cal. April 30, 2019). Plaintiff did list his past work as "maintenance supervisor"[34] but the question here is whether he was the one who reported that he supervised 2-6 other people and spent five hours a day doing so. As noted above, on the Work History Report form (Exhibit 7E) that plaintiff completed and on which the ALJ relied, there was an indication that plaintiff supervised 2-6 people and that he spent 5 hours a day doing so.[35] However, this is the only information on this form that is typewritten. The other information is all handwritten in plaintiff's hand. This form was sent to plaintiff to be completed[36] and it is

---

[34]Admin. Rec. at 272.

[35]Admin. Rec. at 273.

[36]Admin. Rec. at 270.

-10-

quite possible that the information that was typewritten was put there by someone at the agency.  In the disability report - Form SSA-3368, a form completed by an agency employee, in the job history section, there is a notation that plaintiff supervised people as part of his maintenance supervisor job, that he supervised 2-6 people, and that he spent 5 hours a day doing so.[37]  Given that the Form SSA-3368 was completed prior to plaintiff completing the Work History Report,[38] it seems likely that this information was inadvertently transferred to plaintiff's Work History Report and that it was not information that plaintiff himself had reported.

There was plainly ambiguity in the record as to whether plaintiff supervised other people when he was working at the condominium complexes.  It is the ALJ's task to resolve ambiguities in the evidence.  Ford v. Saul, 950 F.3d 1141, 1149 (9th Cir. 2020).  But, there still must be substantial evidence to support her reasoning.  Klein v. Colvin, Case No. 2:15-cv-2584-CKD, 2016 WL 4001109, at *6 (E.D. Cal. July 26, 2016).  Here, the ALJ found plaintiff's statements in the Work History Report to be more persuasive than his statements at the administrative hearing, but the information about supervising people that was provided in the Work History Report does not appear to have been provided by plaintiff.  Rather, that information was most likely supplied by the agency.  Thus, there was not

_____

[37]Admin. Rec. at 234.

[38]The Work History Report was mailed to plaintiff on July 25, 2017.  Admin. Rec. at 269.  According to the Court Transcript Index, the Form SSA-3368 was completed on July 19, 2017.

-11-

substantial evidence to support the ALJ's finding that plaintiff's past relevant work should be classified as that of a maintenance supervisor. This means that the ALJ erred at step four.

This error cannot be considered harmless. "'[A] reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting Stout, 454 F.3d at 1055–56). Whether plaintiff was supervising other people affects how this past relevant work is classified, which in turns affects the exertional level for plaintiff's past relevant work. A maintenance supervisor is classified as light work while a maintenance worker/repairer is classified as medium work. If plaintiff's past relevant work was that of a maintenance worker/repairer, then under the ALJ's RFC, plaintiff could not perform his past relevant work, which could mean that he is in fact disabled.

Plaintiff next argues that the ALJ erred by having the two medical experts testify at the administrative hearing first, prior to any testimony from plaintiff. Plaintiff argues that this violated agency policy as set forth in the Commissioner of Social Security's Hearings, Appeals, and Litigation Manual ("HALLEX"), an internal Social Security Administration policy manual. HALLEX I-2-6-70(b) provides:

> The ME may attend the entire hearing, but this is not required. If the ME was not present to hear pertinent testimony, such as testimony regarding the claimant's current medications or sources and types of treatment, the ALJ will summarize the testimony for the ME on the record.

Plaintiff argues that the agency requires an ALJ to comply with the policies set forth in the HALLEX. SSR 13-2p provides, in pertinent part, that "[w]e require adjudicators at all levels of administrative review to follow agency policy, as set out in the Commissioner's regulations, SSRs, Social Security Acquiescence Rulings (ARs), and other instructions, such as the Program Operations Manual System (POMS), Emergency Messages, and the Hearings, Appeals and Litigation Law manual (HALLEX)." "SSRs are issued by the Commissioner to clarify the Commissioner's regulations and policies." Kolvick v. Astrue, Case No. 10–1804–JCC, 2011 WL 4626014, at *9 (W.D. Wash. July 1, 2011). "Although they do not have the force of law, they are nevertheless given deference 'unless they are plainly erroneous or inconsistent with the [Social Security] Act or regulations.'" Id. (quoting Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989)).

Defendant does not dispute that the ALJ was required to follow HALLEX I-2-6-70(b). But, defendant argues that HALLEX I-2-6-70(b) only requires the ALJ to summarize the claimant's testimony for a medical expert if the ALJ decides that such testimony is pertinent. And here, defendant contends that the ALJ decided that plaintiff's testimony was not pertinent because, as discussed in her decision, she found plaintiff's subjective statements not entirely reliable or credible. Because plaintiff's testimony was not pertinent, defendant argues that it was of no matter that the ALJ did not allow the medical experts to hear plaintiff's testimony or provide them with a summary of plaintiff's testimony.

-13-

What defendant appears to be arguing is that the ALJ had decided, prior to the hearing, that plaintiff's testimony was not reliable and thereby not pertinent, and thus the ALJ was not required to summarize plaintiff's testimony for the medical experts. This argument must fail because to accept such an argument would mean that the ALJ can make her credibility finding as to the claimant's testimony prior to the administrative hearing. If the ALJ can do that, then there would be little reason for a claimant to testify at an administrative hearing.

The ALJ was required to comply with HALLEX I-2-6-70(b) by either allowing the medical experts to hear plaintiff's testimony prior to their testifying or by providing a summary of plaintiff's testimony to the medical experts. Her failure to do either in this case was error.

Plaintiff next argues that the ALJ's RFC was flawed. "In determining a claimant's residual functional capacity, the ALJ must consider all of a claimant's medically determinable impairments, including those that are not severe." Ghanim v. Colvin, 763 F.3d 1154, 1166 (9th Cir. 2014). "[A]n ALJ is not free to disregard properly supported limitations." Robbins v. Social Sec. Admin., 466 F.3d 880, 886 (9th Cir. 2006). However, only those limitations that are supported by substantial evidence must be incorporated into the RFC. Osenbrock v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2001).

The ALJ found that plaintiff had

> the residual functional capacity to perform light work as defined
> in 20 CFR 404.1567(b) with the following exceptions. The

claimant can frequently climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. The claimant can never climb ladders, ropes, or scaffolds. The claimant should avoid all irritants such as fumes, odors, dust, gases, poorly ventilated areas and should avoid unprotected heights.[39]

Plaintiff argues that the RFC is flawed because the ALJ did not include any limitations as to neck movement or reaching despite finding that plaintiff had a severe cervical impairment. Plaintiff contends that the record is full of complaints of neck pain and muscle spasms in the neck and argues that it is likely that some limitations would have been associated with these complaints. Plaintiff points out that the ALJ noted that he had decreased strength in his right grip and muscle spasms in his neck[40] but then failed to include any limitations in his RFC related to these problems.

This argument fails. Plaintiff must point to some evidence that shows exactly what functional limitations he had as a result of his neck pain and muscle spasms. A vague argument that he must have had some limitations because he had neck pain and muscle spasms is insufficient to show that the ALJ failed to include limitations that she should have in his RFC.

Next, plaintiff argues that the ALJ erred as to Dr. Daniel Gonzales' opinion. Dr. Daniel Gonzales did a mental status examination on February 10, 2018. Dr. Daniel

_____

[39]Admin. Rec. at 20.

[40]Admin. Rec. at 21.

-15-

Gonzales' Axis I diagnosis was depressive disorder NOS due to general medical condition.[41]

Dr. Daniel Gonzales opined that plaintiff's "ability to interact with peers, supervisors and the general public is considered moderately impaired. His ability to maintain concentration and focus on simple or detailed repetitive work is considered mildly impaired. [H]is ability to concentrate on multiple tasks is considered moderately impaired."[42]

The ALJ considered Dr. Daniel Gonzales' opinion at step two. The ALJ found that plaintiff's depression was a nonsevere mental impairment and that this impairment would not have "more than minimal limitation in the claimant's ability to perform basic mental work activities. . . ."[43] The ALJ rejected Dr. Daniel Gonzales' opinion as to plaintiff's functional limitations because "it is not consistent with the overall record, such as the November 26, 2018 treatment note, . . . and the claimant's activities, such as re-fiberglassing boats with a friend."[44]

"[F]or claims" such as plaintiff's, which were "filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence." Loriel C. v. Saul, Case No. 2:19-cv-00316-MKD, 2020 WL 4340742, at *11 (E.D. Wash. July 28, 2020). "The new regulations provide that the ALJ will no longer 'give

---

[41]Admin. Rec. at 605.

[42]Admin. Rec. at 86.

[43]Admin. Rec. at 19.

[44]Admin. Rec. at 18.

any specific evidentiary weight . . . to any medical opinion(s). . . .'" Id. (quoting Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68). "Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources." Id.

> The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements[.]"

Id. (quoting 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5)). "Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered." Id. at *11. "The ALJ may, but is not required to, explain how the other factors were considered." Id.

"The Ninth Circuit has not yet stated whether it will continue to require an ALJ to provide 'clear and convincing' or 'specific and legitimate' reasons for rejecting medical opinions given the Commissioner's elimination of the hierarchy" formerly used for considering medical opinions. Tina T. v. Comm'r of Social Security, Case No. C19-6215 BHS, 2020 WL 4259863, at *4 (W.D. Wash. July 24, 2020). But, "[t]he Commissioner's new regulations still require the ALJ to explain his or her reasoning, and to specifically

-17-

address how he or she considered the supportability and consistency of the opinion." Id. "Obviously the ALJ's reasoning must remain legitimate, meaning lawful or genuine, as it must still be supported by substantial evidence and free from legal error[.]" Id.

The reason the ALJ gave for rejecting Dr. Daniel Gonzales' opinion was not legitimate. The ALJ rejected Dr. Gonzales' opinion because it was not consistent with the overall record and cited to two pieces of evidence in support. First, the ALJ cited to a November 26, 2018 treatment note from the AAA Pain Clinic. Plaintiff's provider on that day did a mental status exam which showed that plaintiff was

> well-groomed, clean and normal weight. Behavior: cooperative, calm, pleasant, and eye contact. Speech: fluent, clear, and normal volume. Perception: no hallucinations. Cognition: oriented to situation, time, place, and person; normal attention and concentrating ability; and alert and memory intact. Intelligence: above average. Mood: euthymic. Affect: pleasant, happy, and congruent to thought content. Insight: intact. Judgment: Intact. Thought Processes: intact. Thought Content: Unremarkable. Motor Activity: intact.[45]

The ALJ also cited to the fact that plaintiff had reported that he had been "re-fiberglassing boats with a friend."[46] This information was taken from an August 29, 2018 treatment note from the AAA Pain Clinic, in which plaintiff reported that "[h]e has just recently returned from Ketchikan where he was working on a job re-fiberglassing boats with a friend."[47]

---

[45]Admin. Rec. at 672.

[46]Admin. Rec. at 18.

[47]Admin. Rec. at 682.

-18-

These two pieces of evidence do not constitute substantial evidence supporting the ALJ's finding that Dr. Daniel Gonzales' opinion was inconsistent with the medical evidence of record. The mental status exam is "a mere snapshot of [p]laintiff's functioning on a particular day, and" does not "constitute[] substantial evidence[.]" <u>Harris v. Berryhill</u>, Case No. 2:17-cv-02741-RFB-BNW, 2019 WL 2068469, at *3 (D. Nev. May 10, 2019). Similarly, the isolated report in a treatment note that plaintiff had been helping his friend in Ketchikan is not substantial evidence. That plaintiff might have been able to help his friend with some work says very little about how plaintiff would be able to function in a competitive work environment, which is what Dr. Daniel Gonzales was evaluating. The ALJ erred in rejecting Dr. Daniel Gonzales' opinion.

Finally, plaintiff argues that the ALJ erred in rejecting Dr. Frank Gonzales' opinion. On February 26, 2018, Dr. Frank Gonzales opined that plaintiff had no limitations in understanding, remembering, or applying information; moderate limitations in terms of interacting with others; moderate limitations in terms of concentration, persistence, and pace; and mild limitations in terms of adapting or managing himself.[48] Dr. Frank Gonzales also opined that plaintiff was moderately limited in his ability to understand/remember/carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted by them, interact appropriately with the public, accept instructions and respond appropriately to criticism from

---

[48]Admin. Rec. at 95.

-19-

supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.[49]  Dr. Frank Gonzales recommended that plaintiff have "duties that do not require public contact d/t ct's anger issues and worsening depression."[50]

The ALJ rejected Dr. Frank Gonzales' opinion because "it is not consistent with the overall record" and again cited the November 26, 2018 treatment note, which the ALJ observed had indicated that plaintiff was "calm, pleasant, and [had] normal attention and concentration[.]"[51]  As discussed above, this one mental status exam does not constitute substantial evidence.  The ALJ erred in rejecting Dr. Frank Gonzales' opinion.

Because the ALJ erred, the court must decide whether to remand this matter for an award of benefits or for further proceedings.  "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful."  Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted).  "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits."  Id. The court follows a three-step analysis to determine whether a remand for benefits would be appropriate.  "First, [the court] must conclude that 'the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'"  Brown-Hunter v.

---

[49]Admin. Rec. at 100-101.

[50]Admin. Rec. at 101.

[51]Admin. Rec. at 18-19.

Colvin, 806 F.3d 487, 495 (9th Cir. 2015) (quoting Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014)). "Second, [the court] must conclude that 'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" Id. (quoting Garrison, 759 F.3d at 1020). "Third, [the court] must conclude that 'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" Id. (quoting Garrison, 759 F.3d at 1021). But, "even if all three requirements are met, [the court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" Id. (quoting Garrison, 759 F.3d at 1021)).

Plaintiff argues that a remand for benefits would be appropriate because he would be limited to semi-skilled work if the opinions of Drs. Frank and Daniel Gonzales are credited as true. And, if he is limited to semi-skilled work, he argues that he would have no transferable skills. The vocational expert testified that no skills from plaintiff's past work would transfer to any jobs at the SVP three level.[52] And if he has no transferable skills, plaintiff argues that the ALJ would be required to find that he was disabled as of age 55 based on the Medical Vocational Guidelines ("the Grids"). "Grid rule 202.06 states that a person of 'advanced age' who has a high school education and skilled or semi-skilled work experience but no transferable skills is disabled." Barnes v. Berryhill, 895 F.3d 702, 706–07

_____

[52]Admin. Rec. at 81.

-21-

(9th Cir. 2018). Plaintiff's past relevant work was all skilled work, he was 55 years old at the time of the ALJ's decision, and he has a high school education. Thus, plaintiff argues that if he cannot do his past relevant skilled work, he would be disabled.

The problem with this argument is that there is no evidence in the record that plaintiff would be limited to semi-skilled or unskilled work if he had the limitations that the two Drs. Gonzales opined he had. Further development of the record is necessary to determine what mental functional limitations plaintiff might have and how these limitations might impact his ability to perform his past relevant work or other work.

## Conclusion

Based on the foregoing, the decision of the Commissioner is reversed and this matter is remanded for further proceedings.

DATED at Anchorage, Alaska, this 19th day of February, 2021.

/s/ H. Russel Holland
United States District Judge

-22-